(94 Misc. Rep. 259)

PUPIN v. STIYACHICH.

(Supreme Court, Appellate Term, First Department.    March 30, 1916.)

1. ASSOCIATIONS ⚖═19—LEASE—CONSTRUCTION TO DETERMINE LANDLORD.
    Where a lease of premises, held in trust for the Serb Federation Sloga by its president, the Serb consul general, read: "Contract entered in between the Serb Federation Sloga, through Prof. M. I. P., president, and P. O. S. [the lessee]. (1) Serb Federation Sloga rents the printing plant

with all machines, utensils which are located in the Serbian Home, 443 West Twenty-Second street. (2) Period of rent is four years, from August 15, 1915, to August 15, 1919. It is understood that the trustee of the Serbian Home will guaranty the time after the convention of Serb Federation Sloga"—which lease was signed, "Rentee, P. O. S.; Proprietor, M. I. P., Supreme President Serb Federation, Trustee of the Serbian Home and the Printing Plant," such lease was by the federation, and not by its president.

[Ed. Note.—For other cases, see Associations, Cent. Dig. § 29; Dec. Dig. ☜19.]

2. ASSOCIATIONS ☜19—LEASE—DISPOSSESSION OF TENANT.

Where premises, held in trust for a federation by its president, were leased by the federation through the president, the tenant could not be dispossessed by the president, trustee and owner of the legal title, because the federation which made the lease with his consent did not pay over to him the rent of the premises for a sinking fund for the uses of the federation, as had been agreed.

[Ed. Note.—For other cases, see Associations, Cent. Dig. § 29; Dec. Dig. ☜19.]

Appeal from Municipal Court, Borough of Manhattan, Third District.

Action by Michael I. Pupin, as trustee, landlord, against Petar O. Stiyachich, tenant. From an order awarding possession to the landlord, the tenant appeals. Order reversed, and petition dismissed.

Argued February term, 1916, before LEHMAN, WEEKS, and DELEHANTY, JJ.

Burbank & Tryon, of New York City (James O. Tryon, of New York City, of counsel), for appellant.

Parker, Davis & Wagner, of New York City (Roy M. Robinson, of New York City, of counsel), for respondent.

LEHMAN, J. It appears that on August 17, 1915, the tenant-appellant leased a printing office and outfit at 443 West Twenty-Second street. The title to these premises is in the respondent. The deed under which he holds the premises provides that he shall apply the rents—

"for the purpose of aiding the educational and benevolent fund of the Serb Federation Sloga, a voluntary association, in its work of education and benevolence."

It also empowers the trustee—

"should he so desire to turn over to the said educational and benevolent fund of the aforesaid Serb Federation Sloga, the entire building now located upon the premises hereinbefore mentioned, or any portion thereof, which said building, or portion thereof, may be used by the trustees or committee having control of said educational and benevolent fund of the Serb Federation Sloga for its proper uses and purposes as hereinbefore mentioned."

The respondent claims that he is the landlord of the premises by virtue of the fact that he holds title under this deed as trustee, that as trustee he has leased the printing office to the tenant for four years at a rental of $60 per month, and that the tenant has not paid him this rent. It is undisputed that the tenant has paid no rent to the

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

respondent, but that he has paid his rent to the Serb Federation Sloga, and the only question in this case is whether the Federation or the respondent, as trustee for the educational and benevolent fund of the Federation, is the landlord to whom the rent was payable.

[1] It appears that Michael I. Pupin is not only the trustee in whom title to the building is vested, but he is also Supreme President of the Serb Federation. He is also the Serbian consul general, and as such leases an office in the building which he holds as trustee, and pays rent for the same to the Federation, and he also apparently maintains in the same building certain benevolent activities of his own, which have some connection with the activities of the Federation. Naturally, in all dealings of the respondent in connection with these premises, some confusion is apt to arise as to the capacity in which the respondent was acting, and the present litigation is a result of this confusion. The lease which the respondent claims he made with the tenant, so far as material to this litigation, reads as follows:

"Contract entered in between *the Serb Federation Sloga*, through Prof. M. I. Pupin, president, and Petar O. Stiyachich:

"(1) Serb Federation Sloga rents the printing plant, with all machines, utensils which are located in the Serbian Home, 443 West Twenty-Second street.

"(2) Period of rent is four years; from August 15, 1915, to August 15, 1919. *It is understood that the trustee of the Serbian Home will guaranty the time after the Convention of Serb Federation Sloga.*

"(3) The printing plant's value is $7,200, and on this amount 10 per cent. must be paid; i. e., $720 yearly, or $2,800 for four years," etc. (Italics are mine.)

This lease is signed:

"Rentee, Petar O. Stiyachich; Proprietor, M. I. Pupin, Supreme President Serb Federation, Trustee of the Serbian Home and the Printing Plant."

It seems to me that this lease is plain. Upon its face it is a lease of the premises made by the Serbian Federation Sloga for a period of four years. It also contains, however, a guaranty in regard to part of the term by the trustee of the Home. The reason for the insertion of this guaranty is that under the by-laws of the Federation the officers could enter into no contract extending beyond the term of their office, and the respondent as trustee and owner of the building consequently was called upon to guarantee that the lease would extend beyond this period. As the legal owner of the building he was in a position to make this guaranty. The lease itself, however, is obviously made between the Federation and the tenant, and the respondent signed the lease in the dual capacity only because the lease contains a demise which he could make only in one capacity, and a guaranty which he could make only in the other capacity. Inasmuch, however, as the demise is by the Federation, the relations of landlord and tenant arose between the Federation and the tenant, and not between the trustee and the tenant.

The learned trial justice, however, has held that since the respondent, as trustee, had title to the premises, the lease should be construed as a lease made by him as trustee. It seems to me that this view is erroneous. The respondent in this proceeding is claiming a right to dispossess only on the theory that he actually made the lease

as trustee. It is quite immaterial in this proceeding that in fact as trustee he is the owner of the building, if he made the lease as president of the Federation, for under the lease the tenant would be obliged to pay the rent to the person or corporation who demised the premises, and not to the owner of the title paramount. The lease on its face recites that the Federation is the party making the demise, and it is somewhat doubtful whether the trial justice should have taken testimony intended to explain who was the real lessor. If, however, we assume that this testimony could properly be taken, it does not help the respondent, but, on the contrary, tends to show that the Federation, and not the trustee, was the lessor.

It appears uncontradicted that the Supreme Council of the Federation has charge of its affairs, that the respondent is president of the council, and that he was present at a meeting of the council on June 3, 1915, two months before the lease was made. It is also undisputed that at that meeting the council passed upon the relations of the trustee and the Federation in regard to the rents of the home. The evidence shows that the by-laws of the Federation require that the minutes of each meeting be authenticated by the signatures of the officers present at the meeting. The minutes of the meeting of June 3d are not authenticated by the respondent as president. Consequently the respondent is not precluded from disputing the correctness of the minutes of that meeting, and for the purpose of this appeal we should assume that the explanation by the respondent of what really occurred at this meeting is correct. The respondent testified that at that meeting:

"It was suggested and recommended by me, as president of the Serb Federation and as trustee of the Serbian Home and the Printing Establishment, that the easiest arrangement for everybody concerned would be that the *Serb Federation Sloga* guarantee the payment of *$225 a month* for all the premises. Out of *these $225 a month*, I would, as honorary consul of Serbia and as trustee of the Home, pay $60 a month into the Educational Fund, so *that the Federation would have to be responsible for $165. Out* of this *$165, $60 for the premises occupied by Mr. Stiyachich* and for the printing machinery would be paid directly to be put into a sinking fund." etc.

From this testimony it would therefore appear that the parties contemplated that the trustee should give the Federation the use of the building, and that in return the Federation should be responsible for the sum of $225 rental to be paid to its educational fund. Out of this sum the respondent would, as consul general, pay to the Federation for the fund the sum of $60, leaving the Federation itself responsible for only $165. Out of the $165, for which the Federation was responsible, the sum of $60 should be paid directly to the trustee, to be put into a sinking fund, instead of being expended for the general benevolent purposes of the society. Since the Federation was to be responsible for the sum of $225, it is obvious that the parties contemplated that the Federation should be entitled to the rents of the building to offset against the liability.

It cannot be contended, therefore, that the Federation could not give a lease of parts of the building because the legal title was not in them. The respondent was, under the terms of his deed, empowered

to turn over the whole building to the educational and benevolent fund of the Serb Federation Sloga, and apparently by these resolutions he intended to do so on certain conditions, either with or without a formal lease. As a matter of fact it appears that the respondent has himself recognized this arrangement, because he testified that he pays over to the Federation, for the fund, and not to himself as trustee, the rental of $60 for his office as consul general.

He contends, however, that the resolution provided that the sum of $60 for the rental of the printing office was to be paid *directly* to him as trustee for a sinking fund. That is true; but inasmuch as this sum of $60 was part of the sum of $225 for which the Federation was to be responsible, it would appear that the intent was that this amount should be paid *by the Federation* directly to him, instead of being put with the remainder of the sum of $225 into the general benevolent fund. Moreover, it appears clearly that this was the actual intent of the parties, because the respondent himself testifies that he told the tenant that the lease was being made in form by the Federation because as trustee he expected to make a formal lease of the whole premises to the Federation, and that the clause providing that the "contract was entered into between the Serb Federation Sloga" was inserted in contemplation of such a lease.

We therefore find these facts conceded: The trustee of the premises contemplated that the Federation should be the lessee and responsible for the rent of the entire premises, and that the lease of part of the premises is made by the respondent as president of the Federation in anticipation that this arrangement would be consummated by a formal lease of the whole premises to the Federation by himself as trustee. The lease to the tenant was therefore in form and in fact intended as a lease by the Federation of premises where it then had or where it expected to obtain a right to lease. The relations of landlord and tenant between the Federation and the appellant arose from this contract, and no such relations arose from the contract, or were intended to arise from the contract, between the owner of the premises and the appellant.

[2] The rent was payable under the contract to the Federation, which by the terms of the lease was intended to be the landlord, and the tenant cannot be dispossessed by the owner because his landlord, who made the lease in this form with the consent of the owner, has not paid over to the owner the rent of the premises for a sinking fund, in accordance with its own agreement.

Final order should be reversed, with $30 costs, and petition dismissed, with costs. All concur.